1  Raul Perez (SBN 174687)
   Raul.Perez@capstonelawyers.com
2  Melissa Grant (SBN 205633)
   Melissa.Grant@capstonelawyers.com
3  Arnab Banerjee (SBN 252618)
   Arnab.Banerjee@capstonelawyers.com
4  Alexandria Witte (SBN 273494)
   Alexandria.Witte@capstonelawyers.com
5  Capstone Law APC
   1840 Century Park East, Suite 450
6  Los Angeles, California 90067
   Telephone:    (310) 556-4811
7  Facsimile:    (310) 943-0396

8  Attorneys for Plaintiff Adrian Lopez

9

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12

13  ADRIAN LOPEZ, individually, and on        Case No.:  3:15-CV-01089-JSC
    behalf of all others members of the
14  general public similarly situated,        [Assigned for All Purposes to
                                              Hon. Jacqueline Scott Corely]
15                    Plaintiff,
                                              **PLAINTIFF'S OPPOSITION TO**
16       vs.                                  **DEFENDANT'S MOTION TO**
                                              **COMPEL ARBITRATION AND STAY**
17  KMART CORPORATION, a Michigan             **ACTION**
    corporation; and DOES 1 through 10,
18  inclusive,                                Date:       April 30. 2015
                                              Time:       9:00 a.m.
19                    Defendants.             Courtroom:  F, 15th Floor

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................1

II.  FACTS AND PROCEDURE ...........................................................................2

III. ARGUMENT ..................................................................................................3

    A.   There is No Valid, Enforceable Agreement To Arbitrate Lopez's
         Claims Because He Was A Minor And He Is Entitled To
         Disaffirm The Purported Arbitration Agreement .................................3

         1.   No Valid Agreement To Arbitrate Lopez's Claims Ever
               Formed Because, At The Time He Acknowledged Receipt
               Of Kmart's Agreement, He Was A Minor ...............................3

         2.   In The Alternative, Because Lopez Was A Minor When He
               Acknowledged The Agreement, He May Disaffirm It .............5

    B.   Separately, The Agreement Is Unconscionable And Thus
         Unenforceable .......................................................................................7

         1.   The Agreement Is Procedurally Unconscionable ......................8

         2.   The Agreement Is Substantively Unconscionable ...................12

IV.  CONCLUSION ..............................................................................................14

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ACTION

1

# TABLE OF AUTHORITIES

2

3   **FEDERAL CASES**

4   *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011)................................................8

5   *Bowlin v. Goodwill Indus. Of the Greater E. Bay*, No. 12-cv-01593, 2013

6        U.S. Dist. LEXIS 10506 (N.D. Cal. Jan. 24, 2013)..........................................................9

7   *Burnett v. Macy's West Stores, Inc.*, No. 1:11-cv-01277, 2011 U.S. Dist.

8        LEXIS 116479 (E.D. Cal. Oct. 7, 2011)...........................................................................8

9   *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916 (9th Circuit 2013)..............................7, 8

10  *Circuit City Stores v. Adams*, 279 F.3d 889 (9th Cir. 2002)...........................................7

11  *Circuit City Stores v. Ahmed*, 283 F.3d 1198 (9th Cir. 2002) ................................... 10, 11

12  *Deck v. Spartz, Inc.*, No. 2:11-CV-01123-JAM-DAD, 2011 U.S. Dist.

13       LEXIS 110038 (E.D. Cal. Sept. 27, 2011) ......................................................................7

14  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995).........................................4

15  *I.B. v. Facebook*, No. 12-cv-01894-BLF, 2015 U.S. Dist. LEXIS 29357

16       (N.D. Cal. March 10, 2015) ............................................................................................6

17  *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030 (N.D. Cal. 2012)....................5

18  *Johns v. County of San Diego*, 114 F.3d 874 (9th Cir. 1997)..............................................4

19  *Kilgore v. KeyBank, N.A.*, 673 F.3d 947 (9th Cir. 2011) ............................................ 10, 11

20  *Lau v. Mercedes-Benz USA, LLC*, No. CV 11-1940 MEJ, 2012 U.S. Dist.

21       LEXIS 11358 (N.D. Cal. Jan. 31, 2012)..........................................................................8

22  *Laughlin v. VMware, Inc.*, No. 5:11-CV-00530 EJD, 2012 U.S. Dist.

23       LEXIS 12262 (N.D. Cal. Feb. 1, 2012) .........................................................................10

24  *Lucero v. Sears*, No. 14-cv-1620 AJB (WVG), 2014 U.S. Dist. LEXIS

25       168782 (S.D. Cal. Dec. 2, 2014) .....................................................................................7

26  *Mill v. Kmart*, No. 14-cv-02749-KAW, 2014 U.S. Dist. LEXIS 165666

27       (N.D. Cal. Nov. 26, 2014).................................................................................................7

28  *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006) ................................... 10, 11

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ACTION

1  *Piekarski v. Amedisys Ill., Inc.*, 4 F. Supp. 3d 952 (N.D. Ill. Nov. 12, 2013) ...................14

2  *Pokorny v. Quixtar, Inc.*, 601 F.3d 987 (9th Cir. 2010) ........................................................9

3  *Roe v. SFBSC Management, LLC*, No. 14-cv-03616-LB, 2015 U.S. Dist.

4      LEXIS 26057 (N.D. Cal. March 2, 2015) .....................................................................3, 8

5  *Ruhe v. Masimo Corp.*, No. SACV 11-00734-CJC(JCGx), 2011 U.S. Dist.

6      LEIXS 104811  (C.D. Cal. Sept. 16, 2011)........................................................................8

7  *Velazquez v. Sears*, No 13cv680-WQH-DHB, 2013 U.S. Dist. LEXIS

8      121400 (S.D. Cal. Aug. 26, 2013)......................................................................................7

9  *Williams v. Securitas*, No. 10-7181, 2011 U.S. Dist. LEXIS 75502 (E.D.

10     Penn. July 13, 2011) .......................................................................................................13

11 STATE CASES

12 *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 538 (2004)................................11

13 *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83

14     (2000) .................................................................................................................................8

15 *Berg v. Traylor*, 148 Cal. App. 4th 809 (2007) ................................................................6

16 *Burnand v. Irogoyen*, 30 Cal. 2d 861 (1947) ...................................................................6

17 *Celli v. Sports Car Club of Amer., Inc.*, 29 Cal. App. 3d 511 (1972) ...............................6

18 *Gentry v. Superior Court*, 42 Cal. 4th 443 (2007) ..........................................................11

19 *Higgins II v. Super. Ct.*, 140 Cal. App. 4th 1238 (2006)..................................................10

20 *Iskanian v. CLS Tranportation Los Angeles, LLC*, 59 Cal. 4th 348 (2014)......................11

21 *Mercuro v. Super. Ct.*, 96 Cal. App. 4th 167 (2002) ........................................................10

22 *People v. Lara*, 67 Cal. 3d 365 (1967)..............................................................................4

23 *Samaniego v. Empire Today, LLC*, 205 Cal. App. 4th 1138 (2012)..................................8

24 *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109 (2013) ..........................................8

25 *Sparks v. Vista Del Mar Child & Family Services*, 207 Cal. App. 4th 1511

26     (2012) .................................................................................................................................3

27 *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519 (1997)...................................................8

28 *Wheeler v. St. Joseph Hosp.*, 63 Cal. App. 3d 345 (1976)................................................12

**FEDERAL STATUTES**

9 U.S.C. §§ 1 *et seq.* (Arb. Act (FAA)) ...............................................................3, 8

**STATE STATUTES**

Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Unfair Comp. Law (UCL)) ...............................3

Cal. Civ. Code § 1550 ...............................................................................4

Cal. Civ. Code § 1556 .............................................................................4, 5

Cal. Civ. Code § 1557 ...............................................................................4

Cal. Fam. Code § 6500 ..............................................................................4

Cal. Fam. Code § 6700 ..............................................................................5

Cal. Fam. Code § 6710 .............................................................................5, 6

Cal. Lab. Code § 226(a) .............................................................................3

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ACTION

## I.      INTRODUCTION

Kmart Corporation's Motion to Compel Arbitration And Stay Action ("Motion") should be denied for several reasons.  Most fundamentally, Kmart has failed to establish the existence of a valid and enforceable agreement to arbitrate.  Indeed, Plaintiff Adrian Lopez ("Plaintiff" or "Lopez") was only sixteen and in high school when he purportedly acknowledged the "Arbitration Policy/Agreement" ("Agreement") upon being hired.  As a minor, he lacked the capacity to contract under California law. Therefore there is no enforceable contract between Kmart and Lopez.  Moreover, shortly after turning eighteen in December 2014, the legal age of majority for purposes of entering a contract under California law, Lopez filed this class action to exercise his right to disaffirm the Agreement.  Clear authority provides he has the power to do so within a reasonable time of reaching the age of majority.  When a contract is disaffirmed, it is legally void and a nullity pursuant to governing statutory and case law.  This law is designed to protect minors from unfair contracts, and to discourage adults, who must assume the risk of disaffirmance, from contracting with a minor.  Because the Agreement is legally void and a nullity, Lopez may bring his claims in court and has no obligation to engage in arbitration.

Separately, even if the arbitration agreement between the parties lacked the above infirmities, the Agreement is unenforceable because it is both procedurally and substantively unconscionable.  Kmart's Agreement was presented to Lopez on a take-it-or-leave-it basis as a condition of his employment, despite the inclusion of a purported "opt-out" provision.  At the time he acknowledged the Agreement, Plaintiff was a minor in a weak and vulnerable bargaining position and the Agreement was never explained to him.  And under numerous cases, an opt-out provision does not insulate an arbitration agreement from being found to be procedurally unconscionable, particularly where the opt-out procedure is designed to discourage employees' use of it, as is the case here.  In addition, the terms of the Agreement are one-sided in favor of Kmart, including its acknowledgement that contained no essential terms of the Agreement.

1    For all of these reasons, Kmart's Motion to Compel Arbitration should be denied

2    in its entirety.

3    **II.    FACTS AND PROCEDURE**

4    Lopez was hired by Kmart on or about April 16, 2013, when he was sixteen years

5    old and a sophomore in high school.  (Declaration of Adrian Lopez ["Lopez Decl."] ¶ 2.)

6    He was employed as an hourly-paid cashier at Kmart's Concord retail store location.

7    (*Id.*)  Despite his April date of hire, he did not begin working until mid-May 2013.  (*Id.*).

8    Before he began working in May, Kmart notified Lopez through email that he needed to

9    complete Kmart's training requirements online.  (*Id.* at ¶ 3.)  Included in these

10   requirements was the Agreement, although no one from Kmart ever explained to Lopez

11   that there was an arbitration agreement.  In fact, the Agreement was just one of

12   numerous other training requirements and acknowledgements that Lopez was instructed

13   to complete online.  (*Id.*)

14   Despite Lopez being a minor at the time, Kmart never asked his parents to

15   consent to any documents or the Agreement imposed on Lopez.  (Lopez Decl. ¶ 3.)

16   Lopez "had absolutely no idea what arbitration was" or that it differed from bringing suit

17   in court.  (*Id.*)  Nor did he know he was waiving his right to bring an action in court.

18   (*Id.*)

19   In order to complete the required training, he used his laptop computer at his

20   home.  (Lopez Decl. ¶ 4.)  Because he had to complete other materials related to him

21   being newly hired, such as direct deposit forms and the like, at the same time as the

22   training requirements, Lopez reviewed the materials quickly for fear that certain

23   documents would not get processed in a timely manner and he would not be able to start

24   work or get paid on time.  (*Id.*)  No Kmart personnel walked him through the materials,

25   such as the Agreement.  No one explained to him that the training requirements included

26   an arbitration agreement or the significance of arbitration.

27   He was never told that he could negotiate any terms or review anything with an

28   attorney prior to accepting or acknowledging the Agreement.  (Lopez Decl. ¶ 5.)

1    Because he was instructed to complete the training requirements, Lopez thought he had

2    to agree to all of the documents and acknowledgements in order to work at Kmart.  (*Id.*)

3    In turn, he did not believe he could modify or dispute any of the documents, including

4    the Agreement.  In addition, the arbitration agreement opt-out procedure was never

5    explained to him.  (*Id.*)

6         On January 20, 2015, Lopez brought a class action against Kmart alleging claims

7    for violation of California Labor Code section 226(a) (non-compliant wage statements)

8    and violation of California Business and Professions Code sections 17200, *et seq.*, for

9    which Kmart now seeks to compel arbitration.

10   **III.   ARGUMENT**

11        **A.     There is No Valid, Enforceable Agreement To Arbitrate Lopez's**

12               **Claims Because He Was A Minor And He Is Entitled To Disaffirm**

13               **The Purported Arbitration Agreement**

14        It is well-established that the party seeking to compel arbitration has the burden of

15   proving the existence of a valid agreement to arbitrate.  *See, e.g., Roe v. SFBSC Mgmt.,*

16   *LLC*, No. 14-cv-03616-LB, 2015 U.S. Dist. LEXIS 26057, *13-14 (N.D. Cal. March 2,

17   2015); *Sparks v. Vista Del Mar Child & Family Services*, 207 Cal. App. 4th 1511, 1518

18   (2012).  Though the FAA incorporates a strong federal policy of enforcing arbitration

19   agreements, that policy does not arise until the party seeking to compel arbitration

20   establishes the existence of an enforceable agreement.  *Id.*  Kmart fails to carry its burden

21   of establishing a valid agreement was ever formed because Lopez was a minor at the

22   time he acknowledged receipt of Kmart's Agreement.  In the alternative, even if the

23   Agreement had formed, Lopez has the right to disaffirm it, which he is exercising.

24        **1.     No Valid Agreement To Arbitrate Lopez's Claims Ever**

25               **Formed Because, At The Time He Acknowledged Receipt Of**

26               **Kmart's Agreement, He Was A Minor**

27        When evaluating the validity of an agreement to arbitrate, federal courts "should

28   apply ordinary state-law principles that govern the formation of contracts."  *First*

*Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  Kmart acknowledges this principle.  (Def. Mot. at 9 ("For the 'validity' inquiry, courts generally apply ordinary state law contract principles.").  For a valid contract, California law requires that there be parties capable of contracting, their consent, a lawful object, and consideration.  *See* Cal. Civ. Code § 1550 (listing these "[e]ssential elements of contract").].  "Under California law, an individual under the age of eighteen is a minor."  *Johns v. County of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997); Cal. Fam. Code § 6500[1] ("A minor is an individual who is under 18 years of age.").

Minors, under California law, are incapable of contracting.  Cal. Civ. Code § 1556 (providing that "[a]ll persons are capable of contracting, **except minors**, persons of unsound mind, and persons deprived of civil rights.") (emphasis added).  This is because a primary concern of the Legislature "has been to protect minors from suffering unfair treatment in their dealings with adults simply by reason of their immaturity."  *People v. Lara*, 67 Cal. 3d 365, 379 (1967).  Thus, the "most conspicuous examples of this solicitude are found in the law of contracts, under which a minor is generally deemed to lack the capacity to enter into a binding agreement."  *Id.* (citing Cal. Civ. Code § 1556).

Kmart fails to establish one of the essential requirements for establishing a valid contract.  In its motion, K-Mart neglects California's requirement that parties must be capable of contracting.  Nor did K-Mart indicate that Lopez lacked the capacity to contract, or that any such issue was in doubt.   Of course, Lopez was only sixteen years old when he was hired by Kmart on April 16, 2013, and when he purportedly acknowledged the Agreement on May 20, 2013.  (Lopez Decl. at ¶ 2; Def. Mot. at 5:4-8 (citing May 20, 2013, as the date Lopez "acknowledged receipt of the Agreement and agreed to be bound").  Plaintiff was therefore a minor at the time he purportedly entered

---

[1]  The "capacity of a minor to contract is governed by [provisions] of the Family Code."  Cal. Civ. Code § 1557.  Therefore, the provisions cited in the Family Code throughout apply under these circumstances and they are not limited to specific family law issues or family court.

the Agreement, and, as such, the Agreement is not binding against him.  *See, e.g.*, *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1036  n. 4 (N.D. Cal. 2012) (citing California Civil Code section 1556) (noting that the law allocates the risk of contracting with a minor to the other contracting party given the minor's lack of capacity to contract, which affects "the ability of the other party to enforce the contract against the minor. ").  Lacking the necessary elements of a contract, Kmart has thus failed to prove the existence of any enforceable agreement against Lopez.

### 2.    In The Alternative, Because Lopez Was A Minor When He Acknowledged The Agreement, He May Disaffirm It

Even were the Court to find that an Agreement had formed despite Lopez's minority at the time, California law expressly provides minors the power to disaffirm any such contracts into which they may have entered.  Specifically, "a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards."  Cal. Fam. Code § 6710 (right of disaffirmance); *see also* Cal. Fam. Code § 6700 ("[A] minor may make a contract in the same manner as an adult, subject to the power of disaffirmance.").  Such statutes serve the dual purpose of protecting children and discouraging adults from contracting with children.[2]  *See, e.g.*, *I.B. v. Facebook*, No.

---

[2] The policy of California is to give an added layer of protection to minors, who retain the power to control enforcement of the contracts they enter.  First, as discussed in the previous section, the law allocates the risk of contracting with a minor to the adult party by establishing a bright line age rule under which the minor is conclusively presumed incompetent to contract, if the minor raises the issue.  Second, the minor may disaffirm the contract if made under the age of majority, while the other party does not retain such a right of disaffirmance:

> Cal. Civ. Code § 1556 states that minors are not capable of contracting.  A minor's lack of capacity to contract affects only the ability of the other party to enforce the contract against the minor, not the minor's ability to enforce the contract against the other party.  Under Cal. Fam. Code § 6710, minors may avoid liability on contracts, subject to certain exceptions.  However, only the minor, and not the other party, may disaffirm a contract.

*In re Apple In-App Purchase Litigation*, 855 F. Supp. at 1036.

1    12-cv-01894-BLF, 2015 U.S. Dist. LEXIS 29357, *12-14 (N.D. Cal. March 10, 2015)

2    (citing Family Code section 6710 and noting the "strong public policy in favor of

3    protecting minors, and even more so, of discouraging adults from contracting with

4    minors."); *Burnand v. Irogoyen*, 30 Cal. 2d 861, 866 (1947) ("One deals with infants at

5    his peril. . . . The policy of the law is to discourage adults from contracting with an infant

6    and they cannot complain if as a consequence of violating the rule they are injured by the

7    exercise of the right of disaffirmance vested in the infant.").

8         Here, Lopez is exercising his power to disaffirm the Agreement.  He turned

9    eighteen years of age on December 19, 2014.  (Lopez Decl. ¶ 7.)  Rather than pursue

10   arbitration under the Agreement, he filed this class action on January 20, 2015,

11   approximately one month after reaching the age of majority, with the clear objective

12   intent to disaffirm any purported right of Kmart to compel arbitration of his claims.

13   Moreover, this briefing was filed shortly afterward explicitly reaffirming Lopez's intent

14   to disaffirm the Agreement.  Lopez has thus invoked his right to disaffirm the

15   Agreement within a "reasonable time" of reaching majority.  (Cal. Fam. Code § 6710.)

16   Moreover, "[d]isaffirmance may be made by any act or declaration and express notice to

17   the other party is unnecessary."  *Celli v. Sports Car Club of Amer., Inc.*, 29 Cal. App. 3d

18   511, 517 (1972); *Berg v. Traylor*, 148 Cal. App. 4th 809, 820 (2007) ("No specific

19   language is required to communicate an intent to disaffirm.").  Consequently, the filing

20   of this action, and this subsequent opposition to Kmart's motion, both serve as Lopez's

21   timely disaffirmance.

22        Therefore, Lopez's minority status upon entering the Agreement entitles him to

23   disaffirm that Agreement.  *See Berg*, 148 Cal. App. 4th at 817 (finding that the

24   appellant's "minority status entitled him to disaffirm the agreement [containing an

25   arbitration provision]" and disaffirm the arbitration award itself).  In *Berg*, the Court of

26   Appeal reversed a judgment that had confirmed an arbitration award because the

27   appellant who had been a minor "was entitled to and did disaffirm the agreement which,

28   among other things, required him to arbitrate his disputes."  *Id.* at 820.

Lopez's minority status at the time he purportedly entered the Agreement, and his subsequent disaffirmance of that Agreement, distinguish the instant case from the other case involving Kmart's arbitration agreement (or cases involving Sears' agreement) on which Kmart relies.  Indeed, none of these cases involved a defendant's attempt to impose its arbitration agreement on a minor.  *See, e.g., Lucero v. Sears*, No. 14-cv-1620 AJB (WVG), 2014 U.S. Dist. LEXIS 168782 (S.D. Cal. Dec. 2, 2014); *Mill v. Kmart*, No. 14-cv-02749-KAW, 2014 U.S. Dist. LEXIS 165666 (N.D. Cal. Nov. 26, 2014); *Velazquez v. Sears*, No 13cv680-WQH-DHB, 2013 U.S. Dist. LEXIS 121400 (S.D. Cal. Aug. 26, 2013).

As a result of Lopez's disaffirmance of the Agreement, it is void and unenforceable.  *Deck v. Spartz, Inc.*, No. 2:11-CV-01123-JAM-DAD, 2011 U.S. Dist. LEXIS 110038, *17 (E.D. Cal. Sept. 27, 2011) ("The legal effect of the alleged disaffirmation . . . is that all terms of the contract are now legally void.").  Accordingly, "[d]isaffirmation by a minor rescinds the entire contract, rendering it a nullity." *Id.* at *16.  As the Agreement is "legally void" and a "nullity," Lopez has no obligation to engage in the arbitration of this action and may bring his claims in court.

### B.    Separately, The Agreement Is Unconscionable And Thus Unenforceable

Even if a valid agreement to arbitrate had formed between the parties despite Lopez's minority status, it is unenforceable on unconscionability grounds.  "Like other contracts, arbitration agreements can be invalidated for fraud, duress, or unconscionability." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 921 (9th Circuit 2013) (applying California's general principle of contract unconscionability to an arbitration agreement).  "Under California law, a contract is unenforceable if it is both procedurally and substantively unconscionable." *Circuit City Stores v. Adams*, 279 F.3d 889, 893 (9th Cir. 2002).  Procedural unconscionability "concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement." *Chavarria*,

733 F.3d at 922.  In assessing procedural unconscionability, oppression addresses "the weaker party's absence of choice and unequal bargaining power that results in 'no real negotiation.'"  *Id.*  Substantive unconscionability focuses on terms that are unreasonably favorable to the other party and "unjustifiably one-sided."  *Id.* at 923; *see also Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1531 (1997).  Although both procedural and substantive unconscionability must be shown for the agreement to be invalidated, the courts apply a "sliding scale" analysis, wherein "greater substantive unconscionability may compensate for lesser procedural unconscionability" and vice versa.  *Chavarria*, 733 F.3d at 922; *see also Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 114 (2000) (noting the sliding scale analysis for unconscionability).[3]

### 1.    The Agreement Is Procedurally Unconscionable

The Agreement is procedurally unconscionable for three reasons:  (1) it was

---

[3] Kmart acknowledges that the savings clause of the FAA "preserves generally applicable contract defenses such as unconscionability" and the sliding-scale analysis employed by courts to assess unconscionability.  (Def. Mot. at 10.)  Such an analysis is not dependent on *Armendariz*.  Nevertheless, Kmart also contends that *Armendariz* is no longer good law.  However, the *Armendariz* unconscionability doctrine remains good law after *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011).  *See Lau v. Mercedes-Benz USA, LLC*, No. CV 11-1940 MEJ, 2012 U.S. Dist. LEXIS 11358, *19-20 (N.D. Cal. Jan. 31, 2012) (citing *Armendariz* and noting that "*Concepcion* does not affect the traditional analysis used to determine whether an arbitration clause is unconscionable, " ); *Roe v. SFBSC Management, LLC*, No. 14-cv-03616-LB, 2015 U.S. Dist. LEXIS 26057 (N.D. Cal. March 2, 2015) (following *Armendariz* without question to its viability); *see also Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1159 (2013) (noting that *Armendariz* remains "the seminal California case to examine unconscionability in the context of adhesive arbitration agreements"); *Samaniego v. Empire Today, LLC*, 205 Cal. App. 4th 1138 (2012) ("arbitration agreements remain subject, post-*Concepcion*, to [*Armendariz*] unconscionability").  Moreover, two of the three cases Kmart cites to support *Armendariz's* abrogation merely note that the decision has been questioned but do not make any determination themselves.  *See Ruhe v. Masimo Corp.*, No. SACV 11-00734-CJC(JCGx), 2011 U.S. Dist. LEIXS 104811 (C.D. Cal. Sept. 16, 2011) (noting that "[i]t seems that no court has yet ruled explicitly on this issue, " and that "[t]his Court need not make this determination in this case."); *Burnett v. Macy's West Stores, Inc.*, No. 1:11-cv-01277, 2011 U.S. Dist. LEXIS 116479, *9-10 & n. 3 (E.D. Cal. Oct. 7, 2011) (noting that the court "need not decide the issue" and instead assumes "that the [*Armendariz*] requirements are *not* preempted by the FAA.") (emphasis in the original).

1   forced on Lopez on a take-it-or-leave it basis as a condition of his employment; (2)

2   Lopez was a minor and lacked sophistication; and (3) the Agreement is generic,

3   containing no language specifically applying to Lopez.  Moreover, as explained below,

4   the inclusion of the "opt-out" provision does not diminish or defeat the conclusion that

5   the Agreement is procedurally unconscionable.

6         First, as a condition of employment, Lopez was instructed to complete the policy

7   acknowledgments in the online training portal.  As Kmart admits, "[e]mployees *are*

8   *required* to complete select policy acknowledgements in the MPI portal."  (Def. Mot. at

9   4 (emphasis added).)  The arbitration Agreement acknowledgment is one of these "select

10  policy acknowledgments," purportedly binding Lopez unless he later chose to opt out.

11  Indeed, the acknowledgement computer screen page for the Agreement only has two

12  options for employees to click on or choose: "yes" and "submit."  (*See* Exh. B to

13  Declaration of Roberta Kaselitz ["Kaselitz Decl."], Dkt. No. 5-6 (including a screen shot

14  entitled "Acknowledgement Link").)  There is no button on the page for which an

15  employee may decline to accept the Agreement.  The Agreement was drafted solely by

16  Kmart, the party of superior bargaining strength, and presented to Lopez, the subscribing

17  party, giving him only the opportunity to adhere to the contract without modification on

18  a take-it-or-leave-it basis.  In such circumstances, an agreement is procedurally

19  unconscionable.  *See, e.g.*, *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010)

20  ("[A] contract is procedurally unconscionable under California law if it is 'a standardized

21  contract, drafted by the party of superior bargaining strength, that relegates to the

22  subscribing party only the opportunity to adhere to the contract or reject it."); *Bowlin v.*

23  *Goodwill Indus. Of the Greater E. Bay*, No. 12-cv-01593, 2013 U.S. Dist. LEXIS

24  10506, *9-10 (N.D. Cal. Jan. 24, 2013) (finding a contract procedurally unconscionable

25  because the employee had no opportunity to negotiate terms).

26         Second, the fact that Lopez was a minor—indeed, just a sophomore in high

27  school—adds to its procedural unconscionability.  Lopez was a child, in a weak and

28  vulnerable bargaining position vis-à-vis Kmart, a massive international retail

1   conglomerate. No Kmart employee explained to Lopez that he was being made to enter
2   an arbitration agreement, or sought the consent of Lopez's parents, or told Lopez that he
3   could review the materials with an attorney prior to accepting or acknowledging the
4   Agreement. (Lopez Decl. ¶¶ 4-5.) The fact that a party is "young and unsophisticated"
5   is a factor courts have applied in finding procedural unconscionability. *Higgins II v.*
6   *Super. Ct.*, 140 Cal. App. 4th 1238, 1252 (2006). This is because procedural
7   unconscionability focuses on the unequal bargaining power of the parties, and can be
8   found where, as here, one party has "overwhelming bargaining power." *Nagrampa v.*
9   *MailCoups, Inc.*, 469 F.3d 1257, 1284 (9th Cir. 2006); *see Mercuro v. Super. Ct.*, 96 Cal.
10  App. 4th 167, 174 (2002) ("[P[rocedural unconscionability focuses on the
11  oppressiveness of the stronger party's conduct.").

12      Third, the Agreement fails to identify Lopez or his job description; instead it is
13  merely generic. (*See, e.g.,* Kaselitz Decl., Exh. A at 1, Dkt. No. 5-5 (referring to any
14  employee by use of the generic term "Associate" by providing that "[u]nder this
15  Agreement, and subject to certain exceptions specified within the Agreement, all
16  employment-related disputes between you ("Associate") and Company that are not
17  resolved informally shall be resolved by binding arbitration . . . .").) This lack of
18  specificity also contributes to procedural unconscionability. *See*, *e.g.*, *Laughlin v.*
19  *VMware, Inc.*, No. 5:11-CV-00530 EJD, 2012 U.S. Dist. LEXIS 12262 (N.D. Cal. Feb.
20  1, 2012) (holding that the employment agreement "was not tailored to include Plaintiff's
21  name nor did it describe her employment" and thus was procedurally unconscionable).
22  There is nothing about this Agreement that was tailored to Lopez.

23      In addition, the two cases Kmart raises to attempt to establish lack of
24  unconscionability are distinguishable. Neither involved a multinational corporation
25  attempting to assert an arbitration agreement against an individual who had been in tenth
26  grade at the time the purported contract had been entered. *See Kilgore v. KeyBank, N.A.*,
27  673 F.3d 947 (9th Cir. 2011); *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198 (9th Cir.
28  2002). In addition, *Ahmed* is distinguishable because there the arbitration agreement was

spelled out not only in written materials but also in a videotape presentation. *Ahmed*, 283 F.3d at 1199-1200.  Here, Lopez was simply told to complete all of the training requirements including the Agreement online, and did so at home without any video presentations or Kmart personnel walking him through the material.  (Lopez Decl. ¶¶ 3-4.)  Further, the opt-out provision in *Kilgore* was 60 days and thus provided twice the time for employees to exercise that right as Kmart's agreement.  Moreover, although Kmart makes much out of the opt-out provision here, under established law the choice of opting out does not necessarily insulate an agreement from a finding of procedural unconscionability.  *See Nagrampa*, 469 F.3d at 1282-1284 (noting that the contract was non-negotiable and that the plaintiff's "only choice was to sign it as written or to opt out," the court found procedural unconscionability based on the unequal bargaining power of the parties and the take-it-or-leave-it basis of the contract); *see also Gentry v. Superior Court*, 42 Cal. 4th 443, 451, 470 (2007), overruled on other grounds by *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. 4th 348 (2014) (finding an arbitration agreement with a 30-day opt-out period to have "an element of procedural unconscionability notwithstanding the opt-out provision" and that the "failure to opt out . . . [does] not represent an authentic informed choice" due to unequal bargaining power between employer and employee).

Furthermore, Kmart cannot avert a finding of procedural unconscionability simply by pointing out that some terms of the Agreement were set apart or bolded.  (Def. Mot. at 11.)  Whether the terms of an arbitration agreement are "hidden in the prolix" or clear goes only to "surprise," which is a separate inquiry from "oppression" within the procedural unconscionability analysis—and surprise is not a necessary element for finding procedural unconscionability  *See Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 538, 656 (2004) ("Where an adhesive contract is oppressive, surprise need not be shown."); *see also Nagrampa*, 469 F.3d at 1281 ("A contract of adhesion is defined as 'a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms.'").

1    Moreover, even if demonstrating "surprise" were the only method of

2    establishing procedural unconscionability, simply bolding or setting off certain terms

3    does not immunize that language from attack as being unfairly surprising. Indeed, under

4    certain circumstances the drafting/imposing party must actually point out the existence

5    and meaning of certain terms to the weaker party. *See, e.g.*, *Wheeler v. St. Joseph Hosp.*,

6    63 Cal. App. 3d 345, 359-360 (1976) (noting that "conspicuousness and clarity of

7    language alone may not be enough to satisfy the requirement of awareness. Where a

8    contractual provision would defeat the 'strong' expectation of the weaker party, it may

9    also be necessary to call his attention to the language of the provision."). "[I]f the

10   language of such provision is too complicated or subtle for an ordinary layman to

11   understand, he should be given a reasonable explanation of its implications." *Id.* at 359.

12   Here, there are dense, complex passages in the seven-page, single-spaced Agreement

13   that require an explanation. (*See, e.g.*, Exh. A to Kaselitz Decl. at 3, Dkt. No. 5-5 ("The

14   Private Attorney General Action Waiver shall not be severable from this Agreement in

15   any lawsuit in which (1) the complaint is filed as a private attorney general action and (2)

16   the civil court of competent jurisdiction in which the complaint was filed finds the

17   Private Attorney General Action Waiver is unenforceable (and such finding is confirmed

18   by the appellate review if review is sought). In such instances, the private attorney

19   general action must be litigated in a civil court of competent jurisdiction and not as a

20   private attorney general arbitration.").) Moreover, Lopez was not even an "ordinary

21   layman," but was a minor still in high school at the time of purportedly acknowledging

22   the Agreement and was given no explanation about the Agreement, its significance, or

23   even its existence among all of the training requirements he had to complete. (Lopez

24   Decl. ¶¶ 3-4.) As a result, there is a high level of procedural unconscionability here.

25                    **2.    The Agreement Is Substantively Unconscionable**

26   Both Kmart's acknowledgement process and its opt-out procedure are

27   substantively unconscionable. As a threshold matter, the actual acknowledgement

28   procedure for Kmart's Agreement itself is one-sided in favor of the company and

1    substantively unconscionable.  There is no opportunity for employees to sign Kmart's

2    actual Agreement, but instead are only given the option to click "yes" and "submit" on

3    the acknowledgment page, purportedly binding them to the agreement unless they

4    affirmatively opt out within 30 days.  Such a procedure that does not require an

5    employee to sign and instead purports to bind them unless they opt out has been struck

6    down by a federal district court, holding that it "stands the concept of fair dealing on its

7    head."  *See Williams v. Securitas*, No. 10-7181, 2011 U.S. Dist. LEXIS 75502, *7 (E.D.

8    Penn. July 13, 2011).  Moreover, the acknowledgment that purportedly bound Lopez to

9    the Agreement contains no essential terms whatsoever, including the definition of

10   arbitration or the fact that Lopez would be waiving statutory rights by submitting the

11   acknowledgement.  (*See* Exh. B to Kaselitz Decl., Dkt. No. 5-6 (screen shot for

12   Acknowledgement Link.)  In fact, based on the screen shots provided by Kmart,

13   employees can click on the link for the acknowledgement page and submit their

14   acknowledgment without ever having to access the terms of the Agreement first or at all.

15   (*See id.* (screen shot for Arbitration Policy Link, listing four separate links including a

16   separate link for the acknowledgement page).)  And as mentioned above, the

17   acknowledgement page does not offer any way for employees to decline the

18   acknowledgement, as it only has a "yes" and "submit" button.  Such a procedure is

19   designed to thwart any attempt to decline the Agreement while completing the online

20   portal training process, in particular when the acknowledgement is required as part of the

21   training materials.

22          In addition, the purported "opt-out" procedure is unnecessarily convoluted,

23   clearly intended to thwart its invocation, and as such is another substantively

24   unconscionable term of the Agreement.  The ostensible availability of "opting out"

25   creates the illusion of choice for employees, when the procedure is actually designed to

26   discourage opt outs, thus giving Kmart the advantage of ensuring that as many

27   employees as possible are bound by the Agreement, while later being able to argue that

28   its arbitration procedure is voluntary.  First, Employees are given only a single method of

1   opting out: by signing and returning an opt-out form via U.S. Mail to an Illinois address.

2   (*See* Exh. A to Kaselitz Decl., Dkt. No. 5-5 (arbitration agreement containing opt-out

3   form on last page).)  Employees cannot submit the form in person to any member of

4   Kmart's management team at their jobsite.  However, while they are prohibited from

5   submitting their opt-out forms at their place of employment or online, Kmart employees

6   are required to submit their Agreement "acknowledgements" at the jobsite through the

7   online portal or anywhere they access a computer.  They need only click a submit button

8   on a computer to do so, and there's no other option provided.  In other words, Kmart

9   implements easy procedures for submitting certain employee forms (those acquiescing

10  to its arbitration procedure), but erects barriers such as requiring mail-in procedures

11  within a tight timeframe for other employee forms (those by which employees are

12  rejecting its arbitration procedure).

13          Federal district courts have found similar arbitration opt-out provisions to be

14  unconscionable.  For instance, in *Piekarski v. Amedisys Ill., Inc.*, 4 F. Supp. 3d 952 (N.D.

15  Ill. Nov. 12, 2013), the Court found a similar opt-out procedure to be invalid because it

16  required employees to "affirmatively complete several steps," including opening links to

17  access documents, printing out the document, signing it, and mailing it to a remote

18  address within 30 days.  *Id.* at 956.  The *Piekarski* court found that this process was

19  designed to discourage opt-outs, since "Defendants intended its employees would not

20  follow all these steps and would instead be bound to arbitrate their grievances."  *Id.*

21  Kmart's opt-out procedures similarly require several affirmative steps: employees must

22  access a computer, access the appropriate link, print out the opt-out form, complete and

23  sign it by hand, then mail it to a remote address—while the acknowledgement procedure

24  is decidedly much easier to do and can be done at Kmart with the click of a button on the

25  computer.

26  **IV.    CONCLUSION**

27          Based on the foregoing, Lopez respectfully requests that the Court deny Kmart's

28  Motion in its entirety.

1

Dated:  March 30, 2015                         Respectfully submitted,

2

Capstone Law APC

3

4

By:  /s/ Alexandria Witte

5

Raul Perez

Melissa Grant

6

Arnab Banerjee

Alexandria Witte

7

Attorneys for Plaintiff Adrian Lopez

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY ACTION