UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN LOPEZ,<br>　　　　Plaintiff,<br>　　v.<br>KMART CORPORATION,<br>　　　　Defendant. | Case No. 15-cv-01089-JSC<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION AND STAY ACTION**<br><br>Re: Dkt. No. 6 |

In this putative class action, Plaintiff Adrian Lopez ("Plaintiff") contends that his employer, Kmart Corporation ("Kmart"), failed to provide accurate written wage statements as California Labor Code Section 226(a) requires and engaged in practices that constitute unfair competition under California Business & Professions Code Section 17200. (*See* Dkt. No. 1-1.) Now pending before the Court is Kmart's Motion to Compel Arbitration and Stay Action pursuant to an arbitration agreement under which participating employees and Kmart waived their right to pursue employment-related claims in court in favor of submitting such disputes to binding arbitration. (Dkt. No. 6 at 7.) After carefully considering the parties' arguments, and having had the benefit of oral argument on April 30, 3015, the Court DENIES Kmart's motion.

**BACKGROUND**

Beginning in April 2012, Kmart implemented an arbitration policy/agreement ("Agreement") under which participating employees and Kmart each waived the right to pursue employment-related claims in court, and instead agreed to submit such disputes to binding arbitration. (Dkt. No. 5-4 ¶ 5.) The Agreement contains an introduction, which states:

> Under this Agreement, and subject to certain exceptions specified within this Agreement, all employment-related disputes between you ("Associate") and Company that are not resolved informally shall be resolved by binding arbitration in accordance with the terms set forth below. This Agreement applies equally to disputes related to Associate's employment raised by either Associate or by Company.
>
> **Accordingly, Associate should read this Agreement carefully, as it provides that virtually any dispute related to Associate's employment must be resolved only through binding arbitration. Arbitration replaces the right of both parties to go to court, including the right to have a jury decide the parties' claims. Also, this Agreement prohibits Associate and Company from filing, opting into, becoming a class member in, or recovering through a class action, collective action, representative action, or similar proceeding.**
>
> **If Associate does not wish to be bound by the Agreement, Associate must opt out by following the steps outlined in this Agreement within 30 days of receipt of this Agreement. Failure to opt out within the 30-day period will demonstrate Associate's intention to be bound by this Agreement and Associate's agreement to arbitrate all disputes arising out of or related to Associate's employment as set forth below.**

(Dkt. No. 5-5 at 2 (emphasis in original).) The Agreement further provides that, except as provided, "this Agreement applies, without limitations, to disputes regarding the employment relationship, trade secrets, unfair competition, compensation, pay, benefits, breaks and rest periods, termination, discrimination, or harassment and claims arising under" various federal statutes pertaining to employment claims "and any and all state statutes addressing the same or similar subject matters, and all other state or federal statutory and common law claims." (*Id.*)

Kmart employees, including Plaintiff, participate in online training and acknowledge their receipt of various employment policies using Kmart's "My Personal Information" ("MPI") portal and a training system known as "Learn Your Way." (Dkt. No. 5-4 ¶ 6.) Once employees log into the MPI portal using a unique identification name and password, they may print any documents or pages they view in the portal using Kmart-owned equipment and supplies and at no cost to the employee. (*Id.* ¶¶ 7-8.)

Employees are required to acknowledge receipt of certain policies in the MPI portal, including the Agreement. (*Id.* ¶ 9.) When employees click the link to acknowledge the Agreement, they arrive at a page with links to (1) a PDF of the Agreement; (2) a text file of the

1   Agreement; (3) a link labeled "Opt Out form: Action is required to protect your legal rights to sue
2   the Company in court and/or to participate in any way in a class action, collective action or
3   representative action"; and, set slightly apart, a fourth link labeled "Acknowledge receipt of the
4   Arbitration Policy/Agreement[.]" (*Id.* ¶ 10; *see also* Dkt. No. 5-6 at 3.) After reviewing the
5   Agreement and Opt Out form, employees are asked to acknowledge their receipt of the Agreement
6   by clicking on the "Acknowledge receipt" link. (Dkt. No. 5-4 ¶ 11; *see* Dkt. No. 5-6 at 4-5.)
7   Upon clicking on the acknowledgement link, the employee receives the following message:

> **By clicking below, I acknowledge that I have reviewed and agreed to the terms and conditions set forth in the Arbitration Policy/Agreement. I also understand that I may change my mind and opt out of the Agreement within 30 days of today's date by returning the Arbitration Policy/Agreement within 30 days of today's date by returning the Arbitration Policy/Agreement Opt Out form located at the end of the Agreement.**

13  (Dkt. No. 5-4 ¶ 12; *see* Dkt. No. 5-6 at 5.) To submit their acknowledgement, employees must
14  click on the "Yes" button then click "Submit[.]" (Dkt. No. 5-4 ¶ 13; *see* Dkt. No. 5-6 at 5.) Once
15  an employee does so, his human resources account profile is updated to reflect receipt and
16  acknowledgement of the Agreement. (Dkt. No. 5-4 ¶ 14.)
17      If an employee wishes to opt out, he must either print the Opt Out form, or obtain a printed
18  copy from Kmart, and submit a completed Opt Out form either via mail or fax to the address or
19  number listed on the form. (*Id.* ¶ 16; *see* Dkt. No. 5-5 at 8.) When an employee opts out by
20  complying with this procedure, his human resources account profile is updated to reflect that
21  decision. (Dkt. No. 5-4 ¶ 17.)
22      Kmart hired Plaintiff as a cashier in its Concord store on April 16, 2013, when Plaintiff
23  was 16 years old and a sophomore in high school. (*Id.* ¶ 18; Dkt. No. 10-1 ¶ 2.) Plaintiff did not
24  begin working until mid-May, and is still a Kmart employee. (Dkt. No. 10-1 ¶¶ 2, 7.) Before he
25  began work, Plaintiff received an email from Kmart notifying him that he needed to complete all
26  online training requirements, including acknowledgement of the Agreement. (*Id.* ¶ 3.) Plaintiff
27  completed the training at home on his laptop, including review of the Agreement. (*Id.* ¶ 4.)
28  Plaintiff reports worrying that he had to review the training materials quickly or he might not be

able to start work. (*Id.*) He notes that Kmart did not provide "guidance or actual training" about any of the forms, never requested his parents' consent, and never explained what an arbitration agreement was or that he could review the terms with an attorney. (*Id.* ¶¶ 3, 5.) In any event, Plaintiff acknowledged receipt of the Agreement on May 20, 2013. (Dkt. No. 5-4 ¶ 19-20; *see also* Dkt. No. 5-7.) Plaintiff did not opt out of the Agreement by submitting the Opt Out form within his 30-day window to do so, nor did he do so any time thereafter. (Dkt. No. 5-4 ¶¶ 21-22.)

On January 20, 2015, one month after his 18th birthday, Plaintiff filed a class action complaint in Contra Costa County Superior Court alleging violations of California wage and hour laws. (Dkt. No. 1-1; *see also* Dkt. No. 10-1 ¶ 7.) Kmart timely removed the action to federal court. (Dkt. No. 1.) On March 16, 20145, Kmart filed a motion to compel arbitration and to stay this action. (Dkt. No. 6.)

**LEGAL STANDARD**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2-16, provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Under the FAA, "arbitration agreements [are] on an equal footing with other contracts," and therefore courts are required to enforce arbitration agreements according to their terms. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 66 (2010). "Like other contracts, however, they may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id.* (internal citations and quotations omitted).

The FAA espouses a general policy favoring arbitration agreements. *AT&T Mobility v. Concepcion*, ⎯⎯ U.S. ⎯⎯, 131 S. Ct. 1740, 1745-46, (2011). Federal courts are required to rigorously enforce an agreement to arbitrate. *See Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). The court must direct parties to proceed to arbitration should it determine: (1) that a valid arbitration agreement exists; and (2) that the agreement encompasses the dispute at issue. *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013); *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008); *see also* 9 U.S.C. § 4 ("If a court . . . [is] satisfied that the making of the agreement for arbitration or the failure to comply therewith is not

4

in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."). The party seeking to compel arbitration bears the burden of proving the existence of a valid agreement by a preponderance of the evidence. *See Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010). Courts shall resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

"If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967) (noting that "[o]nce [the court] is satisfied that an agreement for arbitration has been made and has not been honored," and the dispute falls within the scope of the agreement, the court must order arbitration). Although the court may initially determine whether a valid agreement exists, disputes over the meaning of specific terms are matters for the arbitrator to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *Prima Paint*, 388 U.S. at 403-04 (holding that "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate").

If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. The action should be stayed "until such arbitration has been had in accordance with the terms of the agreement[.]" *Id.* § 3.

## DISCUSSION

Kmart seeks to compel arbitration consistent with the Agreement that Plaintiff electronically signed. Plaintiff contends that there was never any valid agreement in the first instance because Plaintiff was a minor when he acknowledged receipt of the Agreement, or in the alternative, because Plaintiff was a minor when he acknowledged the Agreement, he is now entitled to disaffirm it. In addition, even if the Court finds that Plaintiff's age is not fatal to Agreement, Plaintiff further argues that the Agreement is nonetheless unenforceable as

unconscionable.

The first question is whether a valid agreement to arbitrate exists. *Kilgore*, 718 F.3d at 1058. As arbitration is a matter of contract, a party cannot be required to arbitrate a claim that it has not agreed to arbitrate. *AT&T Tech., Inc. v. Comm'cns Workers of Am.*, 475 U.S. 643, 648-50 (1986). "To evaluate the validity of an arbitration agreement, federal courts [ ] apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (internal quotation marks and citation omitted). The court thus determines whether the arbitration agreement is enforceable under the laws of the state where the contract was formed, *Ingle v. Circuit City Stores*, 328 F.3d 1165, 1170 (9th Cir. 2003), or where the employee was employed, *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1105 n.9 (9th Cir. 2003). Here, under either test, the Court applies California law.[1] In California, the elements for a viable contract are (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration. *U.S. ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999); *see also* Cal. Civ. Code § 1550 (listing the same elements).

The parties appear to agree that the Agreement had a lawful object (arbitration of all employment-related disputes) and involved sufficient consideration insofar as both parties waived their right to bring suit in court. The dispute turns on whether Plaintiff was capable of contracting and consenting to the Agreement to arbitrate, and even if so, whether he is entitled to disaffirm the contract now and whether the contract is unconscionable.

California law plainly provides that a minor has the capacity to contract, with the exception of those contracts specifically prohibited.[2] *See* Cal. Civ. Code § 1557 ("[T]he capacity of a minor to contract is governed by Division 11 (commencing with Section 6500) of the Family Code.");

---

[1] Plaintiff is a resident of California who worked at a Kmart store in California. Plaintiff reviewed the contract on the internet from his computer in California. Defendant is a Michigan corporation with stores throughout California. The parties appear to agree that the Court should look to California contract law to determine whether the agreement to arbitrate is enforceable.

[2] A minor cannot do the following: (1) give a delegation of power; (2) make a contract relating to real property or any interest therein; or (3) make a contract relating to any personal property not in his or her immediate possession or control. Cal. Family Code § 6701. Such contracts are void from the start and require no act of disaffirmance. *See id.* None of these types of agreements is at issue here.

6

Cal. Family Code § 6700 ("Except as provided in Section 6701, a minor may make a contract in the same manner as an adult, subject to the power of disaffirmance[.]"). California Family Code Section 6710 sets forth a minor's "right of disaffirmance," unambiguously providing that "[e]xcept as otherwise provided by statute, a contract of a minor may be disaffirmed by the minor before majority or within a reasonable time afterwards[.]" Cal. Family Code § 6710.

Disaffirmance "may be made by any act or declaration" indicating intent to disaffirm; in other words, "express notice to the other party is unnecessary," *Celli v. Sports Car Club of Am., Inc.*, 29 Cal. App. 3d 511, 517 (1972), and "[n]o specific language is required to communicate an intent to disaffirm[,]" *Berg v. Traylor*, 148 Cal. App. 4th 809, 820 (2007). Whatever the method, "[d]isaffirmance by a minor rescinds the entire contract, rendering it a nullity." *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1000 (N.D. Cal. 2012) (citing *Scollan v. Gov't Emps. Ins. Co.*, 222 Cal. App. 2d 181, 183-84 (1963)). The policy behind disaffirmance is clear: it "shields minors from their lack of judgment and experience and confers upon them the right to avoid their contracts in order that they may be protected against their own improvidence and the designs and machinations of other people." *Sparks v. Sparks*, 101 Cal. App. 2d 129, 137 (1950); *see also Fife*, 904 F. Supp. 2d at 999 (same). At the same time, the disaffirmance statute also reflects a policy "of discouraging adults from contracting with minors." *I.B. ex rel. Bohannon v. Facebook, Inc.*, --- F. Supp. 3d ----, No. 12-cv-01894-BLF, 2015 WL 1056178, at *4 (N.D. Cal. Mar. 10, 2015) (collecting cases).

The parties have not cited any California case in which a court considered a minor's right to disaffirm an employment contract or arbitration agreement with an employer, and this Court has found none. However, no case law is required when the relevant statute spells out the answer: the plain language of Section 6710 entitles Plaintiff to disaffirm the Agreement. *See* Cal. Fam. Code § 6710. Filing the instant action was sufficient to disaffirm the contract. *See Celli*, 29 Cal. App. 3d at 517. Plaintiff did so within one month of reaching the age of majority, which by any measure is sufficiently soon to constitute the "reasonable time" that the statute envisions. *See* Cal. Fam. Code § 6710.

California law does specifically exclude certain contracts from disaffirmance: (1) a

7

contract for necessaries for the minor or the minor's family; where (2) the things were actually furnished to the minor or the minor's family; and (3) the contract was entered into when the minor was not under care of a parent or guardian. Cal. Fam. Code § 6712. This law has been read to prohibit minors from disaffirming contracts for shelter or lodging and medical care where all the other statutory requirements are met. *See, e.g.*, *Burnand v. Irigoyen*, 30 Cal. 2d 861 (1947); *Bauman v. City & Cnty. of San Francisco*, 42 Cal. App. 2d 144 (1940), *superseded by statute on other grounds as stated by Brown v. Poway Unified Sch. Dist.*, 4 Cal. 4th 820 (1993). Defendant does not argue that any of the Section 6712 exceptions apply and the Court finds that they do not. That the California legislature expressly excepted particular types of contracts, and did *not* except employment or arbitration agreements like the agreement at issue here, further supports the Court's conclusion that Plaintiff's right to disaffirmance remains intact in this instance. Thus, although Plaintiff had the authority to enter into the Agreement with Kmart in the first instance, he is now entitled to disaffirm it, and has adequately done so.

Kmart's arguments to the contrary are unavailing. At oral argument, Kmart argued for the first time that the Agreement falls under the exception to the right to disaffirmance set forth in California Family Code Section 6711. Notwithstanding that a district court need not consider arguments raised for the first time at oral argument, *see Saunders v. Garay*, No. 11-cv-06322-WHO, 2014 WL 4386727, at *3 n.5 (N.D. Cal. Sept. 4, 2014) (collecting cases), the Court has reviewed Section 6711 and concludes that it does not provide the support that Kmart urges. Section 6711 provides that "[a] minor cannot disaffirm an obligation, otherwise valid, entered into by the minor under the express authority or direction of a statute." Kmart contends that the Agreement here is not subject to disaffirmance per Section 6711 because Labor Code Section 1391 constitutes the "express authority" to enter into this type of agreement. Section 1391, in turn, limits the hours that employers may employ minors, and also sets forth penalties for violations of those hour rules. Cal. Labor Code § 1391. Kmart argues that this statute is "express statutory authority" to enter an employment-related arbitration agreement and therefore Section 6711 prohibits disaffirmance.

The Court does not agree with Defendant's broad (and belated) reading of Section 6711.

8

First, it is unclear whether section 1391 can be construed as express authority for a minor to enter into an employment contract such that section 6711 would prohibit disaffirmance. The statute limits the hours that an employer may employ a minor, but does not expressly state that a minor cannot disaffirm an employment contract. Second, and at a minimum, Section 1391 is not express authority for a minor to enter into an agreement to arbitrate all employment-related claims. This interpretation is especially warranted where the arbitration agreement is not a condition of employment, as Kmart urges. Section 6711 is limited to statutes that expressly provide that minors can enter into such agreements, notwithstanding their age.

The California caselaw discussing the Section 6711 (previously Civil Code § 37) exception, while scant, does not support Kmart's interpretation. In *Michaelis v. Schori,* 20 Cal. App. 4th 133 (1994), the pregnant minor plaintiff contracted with a physician for pregnancy-related services. The contract included a mandatory arbitration agreement. The plaintiff sued for medical malpractice and the physician moved to compel arbitration. The court first observed the general rule that minors can disaffirm their contracts, *id.* at 381, and then noted that the legislature had enacted several exceptions. One such exception applied directly to the case: "Notwithstanding any other provision of law, an unemancipated minor may give consent to the furnishing of hospital, medical and surgical care related to the prevention and treatment of pregnancy, and that consent shall not be subject to disaffirmance because of minority. The consent of the parent or parents of such minor shall not be necessary in order to authorize the hospital, medical and surgical care." Cal. Fam. Code § 34.5 (1994). The court held that this exception to the right of disaffirmance applied as well to the arbitration agreement embedded in the agreement to the provide pregnancy-related services because the legislature "could not conceivably have attempted with [S]ection 34.5 to 'encourag[e] pregnant minors to seek and *doctors to provide* medical care related to pregnancy' without authorizing the minor to commit herself to these two concepts which are near and dear to medical providers." *Id.* at 382.

Here, in contrast, Section 1391 does not expressly disallow disaffirmance of an employment contract as Section 34.5 expressly disallowed disaffirmance of an agreement for pregnancy-related services. What is more, there is nothing in Section 1391 which suggests a

9

legislative policy of encouraging employers to hire minors; to the contrary, the statute limits the hours minors can work and imposes penalties on employers who violate those limitations, thus discouraging employers from hiring minors, whatever one thinks of that policy choice. Finally, the *Michaelis* Court also discussed another statute that involves arbitration agreements with minors for health-related services generally: Code of Civil Procedure 1295. Among other things, the statute expressly disallows disaffirmance of arbitration agreements in contracts for medical services to a minor if the contract is signed by the minor's parent or legal guardian. Cal. Code Civ. Proc. § 1295(d). This statute evinces the legislature's ability to address a minor's disaffirmance of an arbitration agreement when it so intends; Kmart has pointed to nothing that evinces such an intent as to employment-related arbitration agreements. The plain language of section 6710 thus controls.

        Kmart next contends that Section 6710 only applies to contracts for goods and services, not contracts that govern the employment relationship, as is at issue here. While the lion's share of the caselaw addresses disaffirmance in the context of contracts for goods and services, the plain language of Section 6710 is not so limited. Rather, Section 6710 refers to "a contract of a minor" generally, without reference to the type of contract. Instead, the only limitations the statute includes are the express statutory exceptions in Section 6711 and contracts for necessaries in Section 6712. *See* Cal. Fam. Code § 6710. In short, neither these sections nor any others limit the scope of Section 6710 to contracts for goods and services, and Kmart has not cited any cases that hold as much. And even if it had done so, Kmart's argument would fail for another reason. Kmart insists that the arbitration agreement should be considered part of Plaintiff's general employment agreement. So construed, the Court could easily view such agreement as a contract for services—Plaintiff agreed to provide services as a cashier in exchange for payment by Kmart. Thus, the agreement for Plaintiff's services falls within the statute's reach even under Kmart's incorrectly limited reading.

        Kmart's third argument—that it is within the Court's equitable discretion to deny Plaintiff's right to disaffirm—fares no better. In support of this argument, Kmart narrows in on language from a single case: *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1000 (N.D.

Cal. 2012). There, the district court noted that "[a]n action for disaffirmation is one in equity, governed in many respects by the rules relating to rescission of contracts, and the trial court is vested with a broad discretion to see that equity is done." *Id.* at 1000 (citation omitted). It may well be that the most equitable approach is to hold a minor to employment-related contracts given public policy concerns. That is, allowing a minor to disaffirm an arbitration agreement in connection with his employment contract likely would have the perverse effect of discouraging employers from hiring minors altogether, which would surely harm those minors eager to collect a paycheck and mature enough to obtain the necessary work permit to begin a job. Thus, to encourage continued employment of minors in fairness to those who do wish to work, equity might support excepting employment contracts from the right to disaffirm. But, while it has excepted certain types of contracts, the legislature has not done so for employment agreements, and even the broadest equitable discretion does not vest the Court with authority to overrule a statute that in no uncertain terms provides a broad right to disaffirm. Kmart conceded that it could not cite a single case that holds that a court's equitable discretion gives it authority to overrule a statute. And the statute itself provides no such authority: the text reads that a contract may be disaffirmed "[e]xcept as otherwise provided by statute"—hard stop. Cal. Fam. Code § 6710. It does not read "except as otherwise provided by statute *or in the court's discretion*." The Court therefore declines Kmart's invitation to go where no other court has gone before and import new limitations into a statute that the legislature has crafted.

Finally, the cases that Kmart cites are distinguishable. Kmart relies on a Northern District of Illinois decision and a Hawaii state case, both of which refused to allow minors to disaffirm their agreements to arbitrate claims arising from employment. *See Douglass v. Pflueger Haw., Inc.*, 1355 P.3d 129, 145 (Haw. 2006), *and Sheller ex rel. Sheller v. Frank's Nursery & Crafts, Inc.*, 957 F. Supp. 150, 154 (N.D. Ill. 1997). The Hawaii state law in *Douglass* and Illinois state law at issue in *Sheller* involved a common law "infancy doctrine"—*i.e.*, the courts' determinations were based on judge-made law that considered the policy rationale at issue. *See Douglass*, 1355 P.3d at 134; *Sheller*, 957 F. Supp. at 157. In stark contrast to the judge-made law at issue there, California's rules on disaffirmance are set forth in a statute; in other words, the legislature

11

considered the relevant policy implications and arrived at chosen language. It is not for the Court to impose additional limitations or remove those that the legislature included based on its own policy rationale. Thus, neither *Douglass* nor *Sheller* provides support for Kmart's contention that the broad statutory right of disaffirmance is not available to Plaintiff with respect to the Agreement, and the foregoing analysis compels the opposite conclusion. *See Stroupes v. Finish Line, Inc.*, 2005 WL 5610231, at *5 (E.D. Tenn. March 16, 2005) (permitting minor to disaffirm under Tennessee law employment agreement, including related arbitration agreement); *Dickson v. Hoffman*, 305 F. Supp. 1040, 1042 (D. Kan. 1969) (denying motion to dismiss on grounds that minor disaffirmed arbitration agreement by filing a lawsuit).

In short, although Plaintiff entered into a valid arbitration agreement with Kmart, he has exercised his statutory right of disaffirmance, thereby rescinding the contract and rendering it a nullity. *Fife*, 905 F. Supp. 2d at 1000 ( citing *Scollan*, 222 Cal. App. 2d at 183-84); as a result, there is no valid agreement to arbitrate, *see Oliver*, 195 F.3d at 462; Cal. Civ. Code § 1550, so the Court must deny Kmart's motion. *See AT&T Tech, Inc.*, 475 U.S. at 648-50.

Having determined that no there is no valid arbitration agreement to enforce in light of Plaintiff's disaffirmance, the Court need not decide whether the agreement is also unenforceable as unconscionable. However, the Court notes that another court in this District and two other federal judges in California have reviewed the very Agreement at issue and found it enforceable. *See Mill v. Kmart*, No. 14-cv-02749-KAW, 2014 U.S. Dist. LEXIS 165666, at *19 (N.D. Cal. Nov. 26, 2014); *Lucero v. Sears Holding Co.*, No. 14-cv-1620 AJB (WVG), 2014 WL 6984220, at *5-6 (S.D. Cal. Dec. 2, 2014); *Velazquez v. Sears, Roebuck & Co.*, No. 13cv680-WQH-DHB, 2013 WL 4525581, at *8 (S.D. Cal. Aug. 26, 2013). Plaintiff has not persuaded the Court that there is any reason to depart from the well-reasoned judgment of those courts, which found neither procedural nor substantive unconscionability.

## CONCLUSION

Plaintiff disaffirmed the Agreement, so there is no longer any valid, enforceable agreement to arbitrate. The Court therefore DENIES Kmart's Motion to Compel Arbitration and Stay Action. Defendant is directed to answer the complaint by May 21, 2015.

This Order terminates Docket No. 6.

**IT IS SO ORDERED.**

Dated: May 4, 2015

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge